**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**JOHN TAD HINTON**                                                                                                          **PLAINTIFF**

**v.**                                                                                        **CIVIL ACTION NO. 1:13cv528-KS-MTP**

**RONALD KING, ET AL.**                                                                                                  **DEFENDANTS**

**REPORT AND RECOMMENDATIONS**

THIS MATTER is before the Court on the Motion for Summary Judgment [36] filed by the Defendants Ron King, Warden Theresa Seabrook, Captain Barnes, Captain Breeland, Lt. Denise Brewer, Eddie Wolfe, Tommy Heathcock, Mrs. Moore, and Joseph Cooley. Having carefully considered the motion and the applicable law, the undersigned recommends that the motion be granted and this matter dismissed with prejudice.

**BACKGROUND**

Plaintiff John Tad Hinton, proceeding *pro se* and *in forma pauperis*, filed the instant civil rights action pursuant to 42 U.S.C. § 1983, on or about May 2, 2013.[1] Plaintiff is a post-conviction inmate currently in the custody of the Mississippi Department of Corrections ("MDOC") and housed at the South Mississippi Correctional Institution ("SMCI"). The alleged events giving rise to this action occurred while the Plaintiff was incarcerated at SMCI.

Plaintiff's claims and relief sought were clarified and amended by his sworn testimony at a *Spears*[2] hearing held on April 7, 2015.[3] Plaintiff alleges that Defendants failed to protect him from

---

[1]*See* Complaint [1] at 4.

[2]*Spears v. McCotter*, 76 F.2d 179 (5th Cir. 1985).

[3]*See* Omnibus Order [30]; *Flores v. Livingston*, 405 F. App'x 931, 932 (5th Cir. 2010) (stating that the allegations made by a plaintiff at a *Spears* hearing supercede the claims alleged

1

repeated attacks by fellow inmates at SMCI despite his numerous requests to be placed in protective custody. Plaintiff alleges that he was brutally attacked by Vice Lord gang members in late 2012 or early 2013. Plaintiff alleges that he sustained serious injuries as a result of the attack, and was hospitalized at Forrest General Hospital for eight days. Plaintiff states that the Vice Lords "put out a hit" on him, meaning that all the Vice Lords at SMCI were ordered to assault the Plaintiff.

Upon his return to SMCI, Plaintiff claims that Defendant Ron King, the then superintendent of SMCI, attempted to place him in the same unit where the attack took place. Plaintiff alleges that he wrote letters and spoke personally to King, requesting that he be placed in protective custody due to the Vice Lords' threats. Plaintiff alleges that Ron King stated that he did not care what happened to the Plaintiff, and that he did not care if the Vice Lords killed the Plaintiff. Ultimately, Plaintiff claims that he was housed in different unit but was not placed in protective custody, and that he was attacked two more times after speaking with Defendant King.

Plaintiff also alleges that he explained his situation to several other MDOC employees–including correctional officers Seabrook, Barnes, Breeland, Brewer, Wolfe, Heathcock, and Moore, and SMCI administrators Bukfin and Cooley – and requested placement in protective custody. Plaintiff alleges that the Defendants either refused to help him or claimed that they were without the authority to place him in protective custody. He claims that several Defendants told him that only Ron King could order protective custody for an inmate. Plaintiff alleges that he was subsequently attacked by other inmates after writing to or speaking with the above named Defendants. Plaintiff alleges that he is currently housed in a safe unit, but that the Vice Lords' "hit" on him remains and that he constantly fears another attack.

---

in the complaint).

Plaintiff requests injunctive relief in the form of an order from this Court directing SMCI officials to place him in protective custody. He also seeks monetary damages in the amount of $77,000, or $7,000 per Defendant.

Defendants filed their motion for summary judgment [36] and memorandum in support [37] on September 2, 2015. Plaintiff has filed no response to the motion, and the time for doing so has expired. Accordingly, the motion is ripe for disposition.

## STANDARD

A motion for summary judgment will be granted when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The Court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted). The nonmovant cannot survive a proper motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir. 1988); *see also Celotex*, 477 U.S. at 325-26. Instead, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## ANALYSIS

The Eighth Amendment imposed a duty upon prison officials to protect prisoners from violence at the hands of other inmates. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003) (citing *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002)); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994)."Prison officials are not, however, expected to prevent all inmate-on-inmate violence." *Id.* Rather, prison officials may only be held liable for a failure to protect a prisoner if they are "deliberately indifferent to a substantial risk of serious harm." *Id.*

Deliberate indifference requires a prison official to know of an "excessive risk to inmate health or safety" and to disregard that risk. *Farmer*, 511 U.S. at 837. A prison official "knows of" this risk when (1) he is aware of facts from which he could infer "that a substantial risk of serious harm exists" and (2) he in fact "draw[s] the inference." *Id.* To state succinctly, a prison official must be subjectively aware of the risk in order to be deliberately indifferent. *Id.* at 839-40.

Having reviewed the Plaintiff's submissions and the entire record, the undersigned finds no indication that the named Defendants were deliberately indifferent to a substantial risk to the Plaintiff's safety. As outlined above, the Plaintiff alleges that he was attacked by Vice Lords at some point in 2012, and thereafter the Defendants refused to place him in protective custody, which resulted in subsequent attacks by the Vice Lords upon the Plaintiff. As an initial matter, while the record reflects that the Plaintiff was attacked by several inmates at SMCI in September of 2012, it also reflects that the altercation was not based on gang affiliation, as Plaintiff argues. Instead, the report of that incident shows that altercation occurred as a result of the Plaintiff trying to take a motor from a DVD player and use it in a tattoo gun, at which time three inmates intervened and a fight ensued.[4] Plaintiff has presented no evidence to the Court that the September 2012 assault was

---

[4]*See* Incident Report [36-1] at 2; Drill Down Detail Report [36-1] at 7.

4

prompted by gang activity of any kind, such that the named Defendants would be put on notice of a substantial risk to the Plaintiff's safety from that group. Thus, the record does not establish "facts from which the inference could be drawn that a substantial risk of serious harm exists" or that the Defendants drew the inference. *See Farmer*, 511 U.S. at 837.

Moreover, the record is devoid of any evidence that the Vice Lords thereafter attacked the Plaintiff two more times, as he alleges. Plaintiff provides no specific facts regarding these alleged attacks, such as the approximate date they occurred or the identity of the individuals who attacked him.[5] The only specific incident documented in the Plaintiff's institutional records following the September 2012 attack is an altercation with fellow inmate Jimmy Hicks.[6] There is no indication that this incident was gang related or that the Plaintiff was even attacked by Hicks, as Plaintiff received a rule violation report (RVR) for fighting with Hicks.[7] There are other general references to assaults in Plaintiff's institutional record, but none of them implicate the Vice Lords or gang activity.[8]

In sum, there is no evidence before the Court establishing that the Plaintiff is under a substantial threat of harm. However, even if the Plaintiff had made this showing, he has also failed to present any evidence to the Court that the Defendants intentionally ignored the threat. *See Farmer*, 511 U.S. at 837. The record reflects that SMCI employs a "red tag" system, whereby an inmate identifies other inmates within the prison that they believe pose a threat, and prison officials

---

[5]Conclusory allegations are insufficient to establish a constitutional violation under Section 1983; such claims must be supported by specific facts. *See Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

[6]*See* Incident Report [36-1] at 3.

[7]*See* RVR [22-2].

[8]*See* Drill Detail Report [36-1] at 11; 12

keep that inmate separated from these individuals.[9] Defendants submitted Plaintiff's institutional "red tag" list in support of their motion for summary judgment, and it shows that the Plaintiff has identified and is currently separated from no less than thirty-three individuals.[10] Plaintiff has failed to establish that Defendants refused to take measures in order to protect Plaintiff, such as separating him from individuals on his "red tag" list.

The record further reflects that each time Plaintiff has expressed any concern for his safety, prison officials heeded his complaints and acted upon them by issuing red tags or by forwarding Plaintiff's complaints to the appropriate official so that action could be taken. For instance, on September 13, 2012, Plaintiff complained to Ceola McCleod, an SMCI employee, that he feared for his safety in his new housing unit. McCleod made a note of the Plaintiff's complaint and also noted that she would e-mail another prison official regarding his concern.[11] On February 14, 2013, Theresa Seabrook made the following note in Plaintiff's institutional record:

> Ms. Holloway and I spoke to this offender due to a letter he wrote Mr. King; this offender indicated that he was assaulted in Area 1 U-8 and requested Red Tags (he did complete a Red Tag); he was also assaulted in Area II and wanted to Red Tag those offenders (I see where three offenders were on his Red Tag list); he stated he would provide the Case Manager with names and dates and incidents, so the Red Tags could be completed . . . Ms. Holloway will . . . ensure his Red Tags will be completed.[12]

Finally, on March 26, 2013, Plaintiff spoke to Shelly Anderson, another prison official, who noted the following:

---

[9]*See* Keep Separates [36-1] at 18-20.

[10]*Id.*

[11]*See* Drill Down Detail Report [36-1] at 11.

[12]*Id.* at 12.

6

> I spoke with Offender Hinton about his letter than he had wrote to Mr. Sparkman and he states that everything is fine right now in the building that he is in. That he is not having problems with anyone in the building. He stated that he is still in fear of his life due to the assault that happened to him because they were not able to identify all the offenders that attacked him. He was told that if he did happen to see anyone from that incident that he did not red tag at that time or if had a problem with anyone to let a Case Manager or Security know and we would handle it.[13]

Plaintiff has submitted no evidence to the Court contradicting his institutional records or supporting his allegations that the Defendants failed to act to protect him from harm, and he has filed no response to the Defendants' motion for summary judgment. Moreover, even if Defendants did not properly respond to Plaintiff's complaints, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Estate of Davis ex rel. McColly v. City of North Richland Hills*, 406 F.3d 375, 379 (5th Cir. 2005). The record lacks summary judgment evidence showing that Defendants were deliberately indifferent to Plaintiff's need for protection from a substantial risk of serious harm. *See Grissom v. Patterson*, 1993 WL 560256, at *3 (5th Cir. Dec. 27, 1993) ("Wantonness, in the context of a failure-to-protect claim, requires that the defendant be conscious of the inevitable or probable results of [his] failure to take preventative action.") (internal quotations and citations omitted).

Having been confronted with a properly supported motion for summary judgment, Plaintiff can no longer rest on the allegations contained in his pleadings, nor may he proceed on the basis of "unsubstantiated assertions" or "conclusory allegations." *Turner*, 476 F.3d at 343; *Celotex*, 477 U.S. at 325-26. Rather, Plaintiff must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson*, 477 U.S. at 250. This he has failed to do. Accordingly, for these reasons, the undersigned finds that Defendants are entitled to judgment as a matter of law.

---

[13]*Id.* at 12-13.

## RECOMMENDATION

For the reasons outlined above, the undersigned recommends that the Motion for Summary Judgment [36] filed by Defendants Ron King, Warden Theresa Seabrook, Captain Barnes, Captain Breeland, Lt. Denise Brewer, Eddie Wolfe, Tommy Heathcock, Mrs. Moore, and Joseph Cooley be granted, and that this matter be dismissed with prejudice.

## RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 23rd day of March, 2016.

s/ Michael T. Parker
United States Magistrate Judge